The Central Railroad and Banking Company *v.* Kent. | 91 687 95 380 95 731 |

1. This case has already been twice before this court. According to the opinion of a majority of the court when it was decided the last time, there should not, upon the actual merits of the case, have been any recovery against the railroad company. A third verdict having been rendered in favor of the plaintiff below upon substantially the same facts, it must be set aside; and as it is manifest, in view of the repeated trials which have taken place, that the plaintiff can never show a materially different state of facts, direction is given that the case be dismissed.
2. Bleckley, C. J., dissenting. The evidence warranted the verdict, and on the doctrine laid down in 84 *Ga.* 352, the finding ought to stand.
3. Where the plaintiff, by making a *prima facie* case of negligence, has put the defendant on a vindication of its diligence, and this vindication has been made in two successive trials, but the court below has failed to recognize it as complete in either instance, this court, in the exercise of its power to give direction, may decline to order a new trial, and instead thereof, may direct that the action be dismissed. In the present case, such direction was given in order to avoid the onerous and apparently useless trouble and expense to the defendant of vindicating its diligence a third time.
4. After giving such direction, this court, in its discretion, upon good cause shown, might, at the same term, modify its judgment; but no such cause being shown in the present case, the motion to modify is denied.

Main case argued at the last term; decided July 26, 1893.
Motion to modify judgment decided September 30, 1893.

Before Judge Miller. Bibb superior court. April term, 1892.

R. F. Lyon, for plaintiff in error.
Washington Dessau and A. O. Bacon, *contra*.

Lumpkin, Justice.

The main case was decided July 26th, 1893. The first head-note expresses the view of it then entertained by Justice Simmons and the writer. The second head-note states the dissent of Chief Justice Bleckley to the judgment rendered. Afterwards, a motion for a rehearing was made by counsel for the defendant in error, for the purpose of asking a modification of the judgment, in so far as it directed a dismissal of the case in the court below. This motion by a unanimous judgment of the court, covered by the third and fourth head-notes, was denied September 30, 1893.

A brief discussion of the case upon its merits, and of the motion for a rehearing, will now be presented.

This case was first before this court at the October term, 1889. 84 *Ga.* 351. It was then held that the court below committed certain specified errors in ruling out testimony, and that the charge of the court did not prominently bring to the attention of the jury the point upon which the case should turn. A new trial was granted by this court, and at the next hearing a second verdict was rendered in favor of Mr. Kent, the plaintiff. A motion for a new trial was made and overruled, and the case was again brought to this court. 87 *Ga.* 402. After a most anxious and careful examination of the entire record, a majority of the court became fully satisfied that the plaintiff, upon the facts presented, was not entitled to a recovery: first, because it was manifest, beyond doubt, that the washout was caused by the act of God, unmixed with negligence on the part of the railroad company; and second, because, in our judgment, the company had conclusively and satisfactorily shown that it had exercised all the diligence required of it by law in ascertaining the existence of the washout, and was not negligent in failing to discover it in time to give warning of its existence to Mr. Kent before the locomotive he was driving ran into it.

In the opinion beginning on page 403 of the volume last cited, the writer undertook to show, from the undisputed facts appearing in the record, that the washout was attributable alone to the act of God. The argument need not be repeated here, but after a re-examination and the most deliberate consideration of it, there seems to be no doubt of its soundness and correctness. In the same opinion, the writer quoted the fourth head-note of the previous decision, to be found in 84 *Ga.* on page 352, and also the language of Justice BLANDFORD on page 356 of that volume, in which he said: "The question is, was the railroad company negligent in not knowing of the washout, so as to have given the plaintiff due notice and warning?" and on the same page added: "It seems to us the pressure of the whole case is upon this point," etc. Just below these words quoted from the opinion of Justice BLANDFORD, the writer, speaking for Justice SIMMONS and himself, said: "Trying the case by the test thus made, we are of the opinion that the railroad company has conclusively shown it exercised all that ordinary and reasonable care and diligence required of it by law," meaning, as is obvious, that the company had used the full degree of legal diligence in discovering the existence of the washout. 87 *Ga.* 405. Again, on page 407, the following language was used: "Of course, if the company, by its servants, had actually known of the washout, *or the circumstances were such that it ought to have known of it in time to warn the approaching train*, or, if the facts showed that the company had any reason to apprehend danger at this point, and failed to provide against the same, then undoubtedly it would have been a case of such negligence on the part of the defendant as would entitle the plaintiff to recover. *But we do not think this negligence on the part of the company existed*, and are of the opinion that the proof shows to the contrary." There

v 91-44

were no italics in the opinion from which the above
quotation is taken, but they are used here to indicate
that we were undertaking to deal with the question as
to whether or not, according to the evidence, the com-
pany had, or ought to have had, knowledge of the
washout in time to have given the plaintiff warning.
The final conclusion upon this branch of the case is
stated on pages 407 and 408, in the following words:
"Our conclusion, therefore, is, that even upon the line
suggested for a proper solution of this case in the opin-
ion delivered by Justice BLANDFORD, above quoted, the
verdict was unwarranted by the evidence, and ought
not to stand."

It sufficiently appears from the foregoing that when
the decision reported in 87 *Ga.* was made, a majority of
this court were convinced that, under the evidence as it
then appeared in the record, in no view of the case was
the plaintiff entitled to recover. In other words, we
were fully satisfied that the washout which produced
the calamity resulting in the plaintiff's injuries was
caused by the act of God, and that there was no want
of diligence on the part of the company in failing to
discover it in time to give notice of it to the plaintiff.
Accordingly, another new trial was granted, and it re-
sulted in a third verdict, upon substantially the same
facts, in favor of the plaintiff. At the last trial there
was some additional evidence, but all the members of
the court are satisfied that it does not in any material
or substantial particular change or vary the case upon
its actual merits as it appeared when here the last time.
Entertaining this view, Justice SIMMONS and the writer
felt constrained to set the verdict aside, and also to order
that the case be dismissed. All of us feel certain that
the full truth of this case has been developed, and that
further trials of it could not bring out anything new
that would be material in substance. On each trial, the

plaintiff has undoubtedly made out a *prima facie* case. This it was easy to do, in view of the presumption of negligence raised by the law against railroad companies; but the majority are decidedly of the opinion that, on the last two trials at least, the company has conclusively and satisfactorily rebutted this presumption, and has shown itself free from all negligence or blame. It is manifest, we all think, that the plaintiff can never show a materially different state of facts; that is, can never show a state of facts that will, or should, break down what two of us regard as a perfect reply to the plaintiff's case. Of course, a court cannot, and should not, generally, undertake to foresee or predict what a party can or cannot prove; but after a case has been tried time after time, and this court, in view of all the records sent up, and of the character of the case, is fully satisfied that, in the very nature of things, nothing more can be shown which could or ought to change or affect the final result, we may with propriety say it is beyond the power of a particular party to show a materially different state of facts, especially when that party has, all along, been represented by able, faithful and exceedingly diligent counsel, whose efforts in his behalf make it certain that they have brought out all in his favor, and all against the company, which could be proved, and who do not themselves suggest anything material in his favor, or against the company, which further investigation might bring to light. We mean to say that neither the record, nor the argument of this case, either upon the merits or upon the motion to reinstate, suggests any reasonable ground to infer that there is any probability that, upon another trial, any new fact or circumstance would be elicited which could or ought to affect the result. The plaintiff and his witnesses are thoroughly committed to their theory and version of the case, and so are the defendant and its witnesses.

All the witnesses who have testified more than once have, in the main, thus far been consistent with themselves, and the new evidence at the last trial did not add any material features to the case as already developed. The policy of the law requires that long and tedious litigation should come to an end, and the direction given in this case was made in accordance with this policy. See the cases cited below. The defendant in two successive trials has vindicated its diligence to the satisfaction of a majority of this court, and there is not the slightest reason to conjecture it would not do so again and again. To protract this litigation would not only unnecessarily impose on the defendant the trouble and expense of so doing, but would be profitless to the plaintiff himself. The Chief Justice has never disagreed with Justice SIMMONS and the writer in holding that the washout which caused the calamity in this case was due to the act of God, and that the company was not negligent as to looking after the culvert and keeping it in order. His two dissents have been based solely on the opinion entertained by him that the evidence was sufficient to warrant the jury in finding that, after the washout occurred, there was sufficient time for the company to discover its existence and give the plaintiff warning. He has not meant to convey the impression that the jury ought to have so found, but he thinks they might have done so. This is the only point about which we have ever differed in the case. While his opinion on this question has undergone no change, yet, accepting as correct the judgment of the majority upon it, he agrees with us in denying the motion to reinstate the case, and in declining to modify the judgment rendered. Undoubtedly it would, during the term at which it was rendered, be in the power of this court to modify a judgment, upon good cause shown; but no such cause was shown in the present case, and as already stated,

none was even suggested by counsel for the defendant in error. Their position, as we understand it, is that this court had no power to give the direction it gave in this case. We hold otherwise, and are free from doubt in so doing. Section 218, par. 2, of the code undoubtedly empowers this court to make a final disposition of a cause; and section 4284 expressly declares that it may "award such order and direction to the cause in the court below as may be consistent with the law and justice of the case." These sections certainly confer very large and ample powers upon this court; large enough, in our opinion, to authorize the direction given in the case at bar.

In *Harris* v. *Hull, ex'r*, 70 *Ga.* 838, 839, Justice HALL said: "One great purpose in establishing this court was to terminate suits, and with this view, it is made its duty not only to grant judgments of affirmance or reversal, but any other order, direction or decree required, and if necessary, to make a final disposition of the cause (Code, §218), and it is empowered to give to the cause in the court below such direction as may be consistent with the law and justice of the case. *Ib.* §4284. Litigation should never be protracted where this, with due regard to the rights of parties, can possibly be avoided. *Interest reipublicæ ut sit finis litium* is a maxim so old that its origin is hidden in a remote antiquity, and the policy which it inculcates is so essential as not to admit of question or dispute."

Again, in *Robinson* v. *Wilkins*, 74 *Ga.* 47, one of the head-notes reads as follows: "The Supreme Court is authorized to make final disposition of a case, and to give it such direction as is consistent with the law and justice applicable to it, and as will prevent the unnecessary protraction of litigation"; and, on page 50, the same learned Justice says: "We have authority to make a final disposition of this cause (Code, §218), and to that

end to give to it such direction as is consistent with the law and justice applicable to it. *Id*. §4284. This, we think, has already been done, and we are unwilling to protract litigation in any case where it can be avoided with due regard to the rights of parties."

We do not mean to say that the two cases above cited correspond, as to the facts, with the one now before us, but the statements as to the powers of this court are clear, strong and unequivocal. Of course, the powers conferred by the two above mentioned sections of the code should be exercised with proper care and caution, and after careful search we find nothing in the past history or records of this court evincing any disposition on the part of those who have presided in it to exercise them otherwise. In the present case, the two Justices who gave the direction complained of are fully satisfied of its justice and propriety, and the court is unanimous as to its power to give the direction.

*Judgment in the main case reversed with direction, the Chief Justice dissenting. Judgment on the motion to reinstate denied, all the Justices concurring.*