HADDEN, guardian, *et al.* v. FUQUA, executor, *et al.; et vice versa.*

622

Nos. 14229, 14230.   September 22, 1942.   Rehearing denied
October 14, 1942.

*Bussey & Fulcher,* for plaintiffs in error.

*W. K. Miller, Paul T. Chance, R. M. Daley,* and *Lester F. Watson,* contra.

BELL, Justice. █ We consider first the suggestion that the writ of error should be dismissed because of delay in perfecting the main bill of exceptions and obtaining certification after the date when it was first tendered. The final decree was rendered in term on March 16, 1942, and from the certificate of the clerk it appears that the court did not adjourn until more than thirty days afterward. The judge certified that the bill of exceptions was presented to him on March 28, 1942, and remained in his custody and possession until it was finally certified; and that when it was tendered he requested counsel for the plaintiffs in error to submit a copy to counsel for defendants in error, who insisted that a brief of the evidence was necessary, whereas no brief had been specified. Counsel for the plaintiffs in error controverted this contention as to necessity of a brief of the evidence. The court, however, instructed counsel for the plaintiffs in error to confer with opposing counsel in an effort to agree on what evidence should be specified as a part of the record. Accordingly, an agreed brief of the evidence was finally presented to the judge for approval, and was approved by him on May 1, 1942. It was on this date also that the bill of exceptions, after some revision, including specification of such brief of evidence as a part of the record, was finally certified. In connection with his certificate the judge further stated that the delay was not attributable to any fault or negligence on the part of counsel for the plaintiffs in error, and that he had not at any time refused to certify the bill of exceptions pending an agreement between counsel.

The Code declares: "The bill of exceptions shall be tendered to the judge who presided in the cause within 30 days from the adjournment of the court or the date of the decision at chambers; and in the event that the court shall not adjourn within 30 days from

the date of the organization . . of the court, such bill of exceptions shall be tendered to the judge who presided in the cause within 60 days from the date of the decision . . rendered." § 6-902. "If the judge shall determine that the bill of exceptions is not true, or does not contain all the necessary facts, he shall return the same, within 10 days, to the party or his attorney, with his objections to the same in writing. If those objections shall be met and removed, the judge may then certify, specifying in his certificate the cause of the delay. If the judge shall see proper, he may order notice to the opposite party of the fact and time of tendering the exceptions and may hear evidence as to the truth thereof." § 6-909. It is insisted, that, according to several decisions by this court, the writ of error should be dismissed because of unreasonable delay in perfecting the bill of exceptions for final certification after its "return" by the judge as provided in § 6-909.

In *Atkins* v. *Winter*, 121 *Ga.* 75 (48 S. E. 717), it was held, that when a bill of exceptions is returned for correction "a new starting point is fixed," and that it should be corrected within a reasonable time, to be determined as a matter of law, thirty-eight days being declared unreasonable in that case. In *Turner* v. *Turner*, 191 *Ga.* 123, 125 (12 S. E. 2d, 633), it was said: "In the event the judge returns the bill of exceptions to the plaintiff in error for correction, and he fails to retender it to the judge within thirty days in case of ordinary bills of exception or twenty days in case of fast bills, the writ of error must be dismissed, unless the failure so to retender was occasioned by providential or other imperative causes not reasonably within the control of the excepting party. . . If when the bill of exceptions is tendered the judge does not pass on its correctness, but merely notes the date of tender and returns it to counsel for submission to counsel for the defendant in error, counsel for the plaintiff in error must, as in the above instance, act with reasonable diligence in retendering the bill of exceptions." To the same general effect, see *Walker* v. *Equitable Mortgage Co.*, 100 *Ga.* 84 (26 S. E. 75); *Sutton* v. *Valdosta Guano Co.*, 115 *Ga.* 794 (42 S. E. 94); *Duke* v. *Kelly*, 136 *Ga.* 832 (72 S. E. 250); *Whitley* v. *Kelly*, 136 *Ga.* 835 (72 S. E. 346); *Jensen* v. *Jacobs' Pharmacy Co.*, 143 *Ga.* 724 (85 S. E. 873). All of these cases were cited for the defendants in error, and there are still other de-

cisions of similar import; but so far as we have been able to ascertain, either from the decisions themselves or from the records of file, there is no instance of a dismissal where, as in the present case, the bill of exceptions was finally certified within the time prescribed by the Code, § 6-902. In this case the final judgment was rendered on March 16, 1942; and the court having remained open for more than thirty days thereafter, the plaintiffs in error had sixty days from the rendition of the judgment, within which to present a bill of exceptions. They did not wait anything like the full time allowed, but tendered their bill on March 28, and, even after the delay incidental to the brief of evidence, obtained its certification on May 1, about two weeks before the time for original presentation would have expired under § 6-902, supra. We do not think the time allowed by this section is limited by anything contained in section 6-909, nor do any of the decisions so hold. We therefore conclude that there is no merit in the suggestion as to dismissal of the writ of error. If the delay in correcting the bill of exceptions had continued for such length of time as would have prevented final certification within the sixty-day period allowed by § 6-902, a different question would have been presented.

In what has been said we have merely assumed that under the facts appearing the bill of exceptions was *returned* to counsel for plaintiffs in error within the purview of § 6-909. As a matter of fact, the judge certified that he had retained it in his possession, from the time it was first tendered until he finally certified it, and that at no time had he refused to certify it pending an agreement between counsel. Whether the facts amounted to a "return" under § 6-909 need not be decided, since the delay would not be cause for a dismissal, in view of the period which is expressly allowed by § 6-902, and which had not expired at the time of the certification in the instant case.

■ We consider next the question of former adjudication, as this appears to be a controlling issue. As shown in the preceding statement, a suit in Johnson County, based on the same cause of action, was dismissed on general demurrer; and that judgment is still outstanding, a writ of error sued out by the plaintiffs having been dismissed by this court. *Fuqua* v. *Hadden*, 190 *Ga.* 361 (supra). Hadden pleaded the judgment as a bar to the present action, and we have held that this plea stated a good defense.

*Hadden* v. *Fuqua,* 192 *Ga.* 668 (supra). On subsequent reference, the auditor after considering the evidence found as a matter of fact that the plea was not sustained, and the question now is as to the correctness of that finding. In the former decision on this plea it was said: "The defendants in error in the demurrer to the plea of res judicata asserted that it failed to set forth essential portions of the suit in Johnson County. There is no merit in this contention, for it is evident that the petition demurred to, together with the demurrer and the judgment rendered thereon, is the only record necessary to a determination of the question presented by the plea. Although that court had previously sustained Hadden's plea to the jurisdiction, this did in no wise bar Hadden from subsequently submitting to the jurisdiction of the court by presenting his demurrer and procuring a judgment thereon. Such a judgment is binding upon all parties, since, as shown by the plea, the writ of error seeking to review that judgment has been dismissed by the Supreme Court. The material substance of the petitions in both Johnson County and Richmond County is the same. The relief sought in both cases was an accounting by the guardian for all funds and property belonging to the estate of his ward. It did not alter this issue when the defendants Watson and Daley were named in the Richmond County petition solely as alleged conspirators with the guardian, whereby he misappropriated trust property. If there was no misappropriation on the part of the guardian, as the judgment in the Johnson County case adjudicated, then no grounds are set forth in the Richmond County petition entitling the plaintiffs to recover against the new defendants. Likewise the adjudication in favor of the guardian is a bar to any recovery against the surety on his bond. . . Since a judgment on the merits of the plea of res adjudicata will have to precede any further trial of the main case, it is not deemed necessary to now rule upon other questions presented by the bill of exceptions." *Hadden* v. *Fuqua,* 192 *Ga.* 676 (supra).

The evidence before the auditor included the petition, amendment, demurrer, and judgment on demurrer in the former case, thus conclusively establishing the alleged former adjudication in the defendant's favor, unless a contrary finding was authorized in view of certain matters shown by extrinsic evidence, as follows: In considering the Johnson County case, the judge first sustained

a plea filed by Hadden, denominated by him as a "plea in bar," and asserting that the court of ordinary, "having first assumed jurisdiction of said matter, is entitled to proceed with jurisdiction thereof until termination of said case," the order thereon being dated July 29, 1939, and dismissing the suit "as to A. O. Hadden." Counsel for the plaintiffs desired to except, but some question arose as to whether there was such a final judgment as would support jurisdiction in the Supreme Court. In the circumstances, counsel for the respective parties entered into a stipulation as to the particular items that would be contested, and counsel for Hadden then obtained an order sustaining his demurrer. This latter order was actually entered on August 10, but by consent was dated back to July 29, 1939, so as to correspond with the previous order on the "plea in bar," otherwise referred to in the record as "a plea in abatement." While there may be some conflict in the evidence as to whether such order *sustaining* the demurrer, as distinguished from the mere matter of dating, was entered into by consent, this, in our view, is not material. As to the circumstances in which this order was passed, Mr. Chance, of counsel for the plaintiffs, testified in part as follows: "I prepared a bill of exceptions to that order of July 29, 1939 [sustaining the plea], and went to Dublin and presented it to the judge of the superior court on August 10, 1939. The judge, before he would act on the bill of exceptions, called in counsel for Hadden, guardian, and the surety company. They came in, and we, together with the judge, entered into a discussion of the bill of exceptions on August 10, 1939. In the discussion of the case, either I or counsel for the defendant brought up the question of having the court to decide the whole issue—let the Supreme Court decide it by an appeal from the order on the plea in abatement, which, of course, had nothing to do with the merits in the case. In order to do that the court, of course, would have to act upon the demurrer which had been filed by Mr. Hadden, guardian; and the court refused to act on the demurrer or overrule the demurrer, first, because he had already dismissed the case as to Mr. Hadden; and secondly, because the petition of the plaintiff set out a good cause of action. That was agreed upon by Mr. Daley and myself, that the petition of the plaintiff did set out a cause of action; so, in order to try and give the Supreme Court jurisdiction, it was agreed that a stipulation be made, the purpose

of which was to try to give the Supreme Court jurisdiction of the merits of the case, . . and Mr. Daley prepared a stipulation and that was written down with a pencil, and that stipulation that he put down was copied by Mr. Rowland and myself on a typewriter, and the purpose and intention of the stipulation, as it shows, was to have the Supreme Court to pass upon the issues that were in dispute, and so the stipulation was entered up and signed, and read as follows: 'The sole basis of liability insisted upon by the plaintiff upon the hearing of the case was that the disbursements made and set out in paragraph three of the amended petition was that the disbursements made and set out in paragraph—I don't know what this other is; it has been obliterated—of paragraph three of his amended petition were not authorized under the three orders of the court of ordinary attached to the petition.' Now that order was first dated August 10, 1939, that was the day it was prepared and was the day we met there. The suggestion was made, as I recall, by Mr. Daley and Mr. Watson, that the order of the court, which was going to be made on the demurrer, and this stipulation be dated back to the date when the court had dismissed Hadden on his plea in abatement. Well, I didn't see any objection to dating it back, since we were just simply trying to give the Supreme Court jurisdiction to pass upon the merits of the case that were in dispute in the petition."

There was no stronger evidence for the plaintiffs as against the plea of res judicata. The auditor, however, made and reported, among others, the following findings: "There is no evidence in the record that this hearing was had on the merits. I find that counsel agreed that the petition did set forth a cause of action, and that the sustaining of the demurrer was simply a technical method of preparing the case for a final judgment as the predicate of an appeal and in order to give the Supreme Court jurisdiction. I find, from the want of evidence and by inference easily drawn from other facts, that the superior court of Johnson County did not at any time consider the merits of that case. . . In conclusion, the plea of res adjudicata is without merit, and is not a bar to the Richmond superior court suit of the Fuquas." While it appears from the *evidence* that the plea which the judge sustained before ruling on the demurrer was a plea asserting that jurisdiction should be retained by the court of ordinary, which had first assumed jurisdic-

tion, rather than a plea based on residence of the defendant in a county other than that in which the action was instituted, as discussed in our former decision relating to the *pleadings* (192 *Ga.* 668, supra), this difference in the facts does not alter the case on principle. It is still true that notwithstanding the order dismissing the suit as to Hadden, he was *permitted* to urge the demurrer which he had previously filed, and was thus actually allowed to re-enter the case as a party defendant. In the circumstances, if the demurrer had been overruled instead of being sustained, the judgment could no doubt have been pleaded as an adjudication *against* him, and in like manner the judgment sustaining the demurrer may be asserted as an adjudication *in his favor*. The case differs on its facts from *Gafford* v. *Twitty,* 154 *Ga.* 682 (115 S. E. 105), where one of two defendants, after obtaining a dismissal of a suit as to himself, sought to urge an answer and cross-action as against the plaintiff, but was not permitted to do so. Perhaps, in the instant case, the court might have refused to allow Hadden to urge his demurrer after the case had been dismissed as to him on his plea, but as a matter of fact he was permitted, without objection, to urge his demurrer, and judgment was actually rendered thereon. It follows that such judgment must be treated as an adjudication in the defendant's favor, unless there is some other reason to the contrary besides the order that had been entered on his plea. For similar reason, the case differs from *Smith* v. *Grand Lodge Knights of Pythias,* 145 *Ga.* 607 (2) (89 S. E. 688).

Counsel for the plaintiffs rely upon the Code, § 3-608, declaring that "Parol evidence shall be admissible to show that a matter apparently covered by the judgment was really not passed upon by the court." This provision was contained in the Code of 1863 as section 2839, and has appeared in each of the subsequent Codes. It accords with the statement in the early case of *Ezzell* v. *Maltbie,* 6 *Ga.* 495, 501, that "the former record will not be considered as having settled the present matter, unless the judgment to which this effect is ascribed could not have passed without having decided the present matter," and was intended perhaps as a codification of that principle. Compare Code, § 110-503; *Hill* v. *Freeman,* 7 *Ga.* 211; *National Bank of Augusta* v. *Southern Porcelain Manufacturing Co.,* 59 *Ga.* 157, 165; *Papworth* v. *Fitzgerald,* 111 *Ga.* 54 (36 S. E. 311); *Draper* v. *Medlock,* 122 *Ga.* 234 (50 S. E. 113,

69 L. R. A. 483, 2 Ann. Cas. 650) ; *Callaway* v. *Irvin,* 123 *Ga.* 344 (4) (51 S. E. 477) ; *Irvin* v. *Spratlin,* 127 *Ga.* 240 (55 S. E. 1037, 9 Ann. Cas. 341). Section 3-608; as quoted supra, must be construed in harmony with other sections to the effect that a judgment of a court of competent jurisdiction, if not absolutely void for some reason, shall be conclusive between the same parties and their privies, until it is reversed or set aside, and *may not be impeached collaterally.*

The demurrer filed by Hadden to the petition in the Johnson County case contained, among others, substantially the following grounds: (1) No cause of action, legal or equitable, is set forth in said petition against this defendant; (2) the petition as a whole fails to allege any facts to authorize the relief prayed; (3) the petition as a whole is so vague and indefinite that it would not put this defendant on notice of the facts on which the plaintiffs base their claim to the relief sought; (4) the petition shows upon its face that the court of ordinary of Laurens County had assumed jurisdiction of the same subject-matter before the filing of this suit, and the said court of ordinary has full and complete jurisdiction of the parties and the subject-matter. The demurrer also contained several special grounds. The judgment was as follows: "The within demurrer coming on to be heard, after argument the same is hereby sustained. This July 29, 1939." It is declared in the Code: "If upon demurrer the court shall decide upon the merits of the cause, the judgment may be pleaded in bar of another suit for the same cause." § 110-504. Under the language of the foregoing judgment, there is no presumption that it was based upon any particular ground of demurrer, to the exclusion of others; but it should be treated as sustaining the demurrer upon all grounds. *McClaren* v. *Williams,* 132 *Ga.* 352 (2) (64 S. E. 55) ; *DeLoach* v. *Georgia Coast & Piedmont Railroad Co.,* 144 *Ga.* 678 (87 S. E. 889) ; *Revels* v. *Kilgo,* 157 *Ga.* 39 (121 S. E. 209). It follows that, according to the former record as introduced in the instant case, the court in ruling on the demurrer apparently decided on the merits of the cause; and if the extrinsic evidence that was submitted tended in any degree to show the contrary, it was to that extent a mere effort to impeach the judgment collaterally, and this could not be done. The evidence therefore demanded a finding in favor of the plea of res judicata, and the court erred in over-

ruling the defendants' exceptions of fact to the findings of the auditor as to that question. See further, *Wiley* v. *Kelsey*, 9 *Ga.* 117; *Gray* v. *Hodge*, 50 *Ga.* 262 (2); *Archer* v. *Guill*, 67 *Ga.* 195 (2); *Stewart* v. *Stisher*, 83 *Ga.* 297 (2) (9 S. E. 1041); *Prisant* v. *Feingold*, 169 *Ga.* 864 (2), (3) 867 (151 S. E. 799); *American Surety Co.* v. *Baldwin*, 45 *Ga. App.* 112 (3) (163 S. E. 235).

In what has just been said, we have of course dealt only with the record and the extrinsic evidence *as introduced*. Whether under the grounds of the demurrer and the form of the order passed thereon it would have been legally possible to show by *any kind* of parol or extrinsic evidence that the merits of the cause were not in fact adjudicated, without impeaching the judgment collaterally, is a question that is not involved and is not determined. There is a material difference between explaining a judgment and impeaching it; but, as indicated above, if the extrinsic evidence here did not in fact support the inference to be drawn from the record itself that the merits of the case *were* adjudicated, it could have no other effect than to impeach the judgment collaterally, and hence did not authorize a finding that the merits were not adjudicated.

■ If the brief for the defendants in error should be construed as contending that the plea of tender as filed by Hadden would nullify his plea of res judicata as considered in the preceding division, we can not sustain such contention. While the plea of tender was filed after the plea of res judicata, and contained no reservation in favor of that plea, it is the law in this State that a defendant may file contradictory pleas; and whatever may be the rule elsewhere, the plea of tender in this case did not prevent the defendant from relying upon his plea of res judicata for the purpose of defeating a recovery in excess of the sum tendered. Code, § 81-310; 26 R. C. L. 650, §§ 32, 33; 62 C. J. S. 684, § 67; 38 C. J. 1185, § 561; Wilson *v.* Doran, 110 N. Y. 101 (17 N. E. 688); La Rault *v.* Palmer, 51 Wash. 664 (99 Pac. 1036, 21 L. R. A. (N. S.) 354, note). Yet, since the plea of tender contained no condition or reservation, it should be taken as an unqualified admission of liability to the extent of the sum tendered, and, as it stands, will demand a judgment in favor of the plaintiffs in that amount. *Gibbs* v. *Swords*, 28 *Ga. App.* 177 (2) (110 S. E. 499); *Davis* v. *Metropolitan Life Insurance Co.*, 48 *Ga. App.* 179 (172 S. E. 467);

*Elliott* v. *Marshall*, 182 *Ga.* 513 (3) (185 S. E. 831). Further reference to this plea will be made in the final division of this opinion.

■ The court did not err, as contended in the cross-bill of exceptions, in refusing to approve the plaintiffs' exception of fact to the finding of the auditor as to the amount of income received by the guardian. The contention here relates to the amount and value of farm products and live stock received by the guardian from share croppers. The finding of the auditor accorded with returns filed by the guardian; but it is insisted that some of these returns were not sufficiently authenticated, and that evidence from these laborers or share croppers demanded a finding that the receipts amounted to more than was shown in such returns. It appears from the record, however, that the finding in the guardian's favor did not rest alone upon the written returns which had been made by him. The report of the auditor referred to testimony of the guardian himself, to the effect "that his returns reflected every transaction in and out;" and therefore, although the guardian's testimony does not appear in the record, it can not be said that the auditor was not authorized to find as he did as to income received. Moreover, since the issue related to the value of physical property, it could not be determined by the court as a matter of law, but would constitute a question of fact, even apart from the conflict apparently presented by the testimony of the guardian. Code, §§ 38-1708, 38-1709; *Baker* v. *Richmond City Mill Works*, 105 *Ga.* 225 (31 S. E. 426); *Jennings* v. *Stripling*, 127 *Ga.* 778 (3) (56 S. E. 1026); *Bonds* v. *Brown*, 133 *Ga.* 451 (2) (66 S. E. 156). It follows that the assignments in the cross-bill do not show error.

■ We are of the opinion that in view of the history of this controversy, and the facts shown above in this opinion and in the statement preceding, the case is one in which direction should be given by this court. Under the facts appearing, there is no need for a new reference. The pleadings are the same as they were at the time we passed on the sufficiency of the plea of res judicata. 192 *Ga.* 668 (supra). The evidence is also the same in every respect. After that decision and a re-reference to the auditor, the parties stipulated that the evidence and testimony theretofore adduced was still before the auditor for consideration, to be given the same effect and consideration as if adduced before him under the last "said

reference," and "that the parties hereto have no other or further evidence to introduce." The evidence thus submitted to the auditor demanded a finding in favor of the plea of res judicata; and as the parties thus stipulated that they "have no other or further evidence to introduce," direction is hereby given as follows: After vacating the judgment and decree now existing in the plaintiffs' favor, the judge will approve the defendants' exceptions of fact to the auditor's findings on the plea of res judicata, and then, after impaneling a jury, will direct a verdict in favor of such exceptions, on the evidence in the record. This will have the effect of setting aside the auditor's findings as to that plea; but since it will not dispose of the issue presented by the plea, a further verdict for the defendants on such plea should be directed. As the latter verdict will relate to a controlling issue, it will supersede all other findings of the auditor, and will entitle the defendants to a final decree in their favor, except as to the amount tendered by Hadden, for which judgment will be rendered against him and in favor of the plaintiffs. As to the effect of a judgment sustaining a plea of res judicata, see *English* v. *Rosenkrantz*, 150 *Ga.* 745 (105 S. E. 292); *Peerless Laundry Co.* v. *Abraham*, 193 *Ga.* 179 (17 S. E. 2d, 267). As to the proper practice after approval of exceptions of fact, see Code, §§ 10-402, 37-1103; *Weed* v. *Gainesville, Jefferson & Southern Railroad Co.*, 119 *Ga.* 576 (46 S. E. 885); *Hightower* v. *Phillips*, 193 *Ga.* 444 (7) (18 S. E. 2d, 848). As to authority of this court to direct final disposition, and the propriety of such direction in this instance, see Code, §§ 6-1610, 6-1804, 24-3901; *Robinson* v. *Wilkins*, 74 *Ga.* 47 (*b*); *Brown* v. *Joiner*, 77 *Ga.* 232 (3 S. E. 157); *Central Railroad & Banking Co.* v. *Kent*, 91 *Ga.* 687 (18 S. E. 850); *Comer* v. *Dufour*, 95 *Ga.* 376 (2) (22 S. E. 543, 51 Am. St. R. 89); *Austin* v. *Southern Home Building and Loan Association*, 122 *Ga.* 439 (10) (50 S. E. 382); *Finley* v. *Southern Railway Co.*, 5 *Ga. App.* 722 (64 S. E. 312); *Fudge* v. *Kelly*, 6 *Ga. App.* 5 (64 S. E. 316).

While in view of the direction thus given it may have been useless to rule on the assignments of error in the cross-bill of exceptions, as we have done in the preceding division, yet under the Code, § 6-901, we are required to decide the questions made on a cross-bill "if a reversal of the judgment of the court below shall be ordered, or if the effect of the affirmance shall be to leave the case

to be again tried in the court below." The effect of our judgment is to leave the case to be tried again in the court below, notwithstanding we are giving a direction that will result in final disposition. Technically at least, it seems we should rule upon the cross-bill, and it is easier to do so than it would be to determine whether in the circumstances a decision thereon is actually required by law.

In the view which we have taken, it is unnecessary to rule upon questions other than those which have been dealt with in the foregoing opinion.

*Judgment reversed, with direction, on the main bill of exceptions; affirmed on the cross-bill. All the Justices concur.*