## Wells *v.* Dillard *et al.*

1. Where it appears that a widow made application for dower, that commissioners to assign the same were duly appointed and that the dower land was in fact laid off, and the widow entered into possession and occupied the same for more than seven years, with the consent and acquiescence of the administrator and of the heirs at law, her privies in estate, as well as she herself, are estopped from controverting the regularity and validity of the assignment on the ground that the commissioners failed to make any return, and that no judgment of the court was rendered adopting or confirming the action of the commissioners. Inasmuch as the administrator and the heirs would be estopped by their consent and acquiescence, the widow and those claiming in privity with her are estopped also.

2. Where an administrator sells and conveys to a widow so much of a named lot of land as may be embraced in these terms of description: "lot land 154 in 31st dist. Marion county, except the widow's dower and ten acres off southeast corner,"—the administrator's deed also reciting that the widow "bought all of said lot except the widow's dower and ten acres off of the southeast corner of said lot," the widow at the time of the sale being in possession of a definite portion of the west part of the lot, which portion had been previously laid off as her dower, the proper construction of the conveyance is, that both this portion and the ten acres in the southeast corner were wholly excepted from the sale made by the administrator, the phrase "the widow's dower," as used in the conveyance, meaning not the legal right of dower, but the parcel of land itself over which that right had been asserted and exercised.

3. The heirs having consented to and acquiesced in the entry and occupation by the widow, raising no question as to the mode or legality of assigning and laying off her dower, they had no right to the possession until after her death, inasmuch as, under section 2260 of the code, no forfeiture resulted by reason of her conveying the fee to another. The statute of prescription, therefore, did not, before the death of the widow, commence to run against the heirs and in favor of a person claiming under her or her vendee.

April 9, 1894. Argued at the last term.

Complaint for land. Before Judge BUTT. Marion superior court. April term, 1893.

BLANDFORD & GRIMES and G. P. MUNRO, for plaintiff in error. PEABODY, BRANNON, HATCHER & MARTIN and W. D. CRAWFORD, *contra.*

LUMPKIN, Justice.

Dempsey Dillard died in 1853 or in 1854, and in 1857 one Bell was appointed administrator of his estate. At the September term, 1857, of the superior court of Marion county, Mrs. Harriet Dillard, the widow of the intestate, filed an application for dower. Commissioners were appointed, the dower was in fact laid off, embracing sixty-two acres of the west half of lot number 154 in the 31st district of that county, and a plat of the same was made by a surveyor in November of that year. The commissioners made no return to the superior court, and there was no judgment of that court adopting or confirming their action. Nevertheless, the widow, with the consent and acquiescence of the administrator and of the heirs at law, took possession of the land so set apart as her dower, and remained in possession of the same until about the end of the year 1869.

Under an order from the court of ordinary, Bell, the administrator, on the first Tuesday in December, 1857, sold to the widow the land hereinafter described, the terms of the sale being, one third cash, and the balance on credit. The administrator, in pursuance of this sale, made a deed to Mrs. Dillard on the 10th of January,

1863. That deed recited the sale to Mrs. Dillard, her heirs and assigns, of "lot land 154 in the 31st dist. Marion county, except the widow's dower and ten acres off southeast corner," and further, that the widow "bought all of said lot except the widow's dower and ten acres off of the southeast corner of said lot." On the 25th of December, 1869, Mrs. Dillard conveyed to Daniel Jones "fifty acres off of the north side of lot 154 in 31st dist. Marion county." Afterwards Mrs. Dillard died. W. H. Dillard and others, who are heirs at law of Dempsey Dillard, brought an action against Wells, who holds under Daniel Jones, to recover twenty acres of land in the northwest corner of the lot mentioned. The twenty acres in dispute are a part of the land set apart as dower, and are also embraced in the deed from Mrs. Dillard to Daniel Jones.

1. As will have been seen, it clearly appears that the widow occupied for about twelve years the land set apart to her as dower. As her right to dower would have become barred after the lapse of seven years, it should hardly require argument to prove that the administrator and the heirs, after having consented to and acquiesced in her right to the dower for more than seven years, were estopped from controverting the regularity and validity of the assignment on the grounds indicated in the first head-note. In *Peters et al.* v. *West, guardian, et al.*, 70 *Ga.* 343, there were irregularities in the assignment of the widow's dower; but this court held that where premises were assigned as dower to the widow, who went into possession of the same, the proceedings to obtain dower should not be rejected from evidence because of such irregularities. JACKSON, Chief Justice, said: "The widow occupied the land as dower, and that cured all irregularities, if any." See, also, *Brown* v. *Colson et al.*, 41 *Ga.* 42. In 1 Woerner on Administration, §117, the author says: "The method of as-

signing dower to the widow is prescribed by statute in a number of States; at common law, and in the absence of a statutory provision to the contrary, it is not necessary to resort to legal proceedings for this purpose; the parties may bind themselves as effectually in the matter of assigning dower, as in any other transaction. It may be done by parol; nothing is required but to ascertain and assign her share to the widow, and then, if she has entered, the freehold vests in her." We entertain no doubt that, as against the administrator and the heirs at law, the assignment of Mrs. Dillard's dower was perfectly good. Of course, she herself was conclusively estopped from questioning in any manner the validity of her own dower, and it follows that her privies in estate are likewise estopped, for they can occupy no better position than she herself. Her interest in the land embraced in the dower was only an estate during her life, and consequently, so far as that land is concerned, nothing more than an estate therein for her life passed by her deed to Daniel Jones, unless she became the purchaser of the reversion at the administrator's sale already mentioned.

2. We think it quite clear that she did not become the purchaser of that reversion. In view of the recitals in the administrator's deed, the proper construction of that conveyance is, that the land covered by the dower, and the ten acres in the southeast corner of lot number 154, were wholly excepted from the sale. Undoubtedly, the administrator might have sold the fee in the entire lot, reserving the dower estate; but we do not think he did so. Taking his deed as a whole, there is scarcely a doubt that the phrase "the widow's dower" did not mean the legal *right* to dower, or the dower estate, but the parcel of land which had been set apart as dower, and of which the widow was in possession as such.

3. We have endeavored to show that, so far as the

heirs at law are concerned, the widow's right to dower was in all respects as perfect and complete as if it had been duly and legally assigned in the manner prescribed by law under proceedings entirely free from defect or infirmity. Consequently, these heirs had no right to possession until after the widow's death, because, under section 2260 of the code, no forfeiture results from an attempt by a tenant for life to sell the entire estate in the land. The purchaser, however, acquires the interest of the tenant for life. The heirs, therefore, had no right to bring an action for the land before the death of the widow; and this being so, the statute of prescription did not begin to run against them, and in favor of Wells (who holds under Jones, the first vendee of the widow), until after her death took place. There was no contention that, counting from this time, the defendant had a good prescriptive title against them. The verdict in their favor was therefore manifestly right under the law and the evidence, and the court properly declined to grant a new trial.               *Judgment affirmed.*