## CALLAWAY *v.* IRVIN, administrator.

1. Where land belonging to the estate of a decedent is actually admeasured by commissioners appointed to set apart dower to his widow, and she enters into possession of the same with the acquiescence of all persons concerned, it is not essential to the creation of a dower estate therein that there should be an order of court formally assigning the land to her as dower. It follows that the right to enjoy the reversionary interest in the land is postponed until the termination of the dower estate by her death, and prescription will not run against persons entitled to the reversion until their right of enjoyment accrues.

2. Where the record of a legal proceeding shows on its face that an order passed in vacation by the judge of the superior court is void for want of jurisdiction over the subject-matter, such order may be collaterally attacked at any time by any person who has not by his conduct estopped himself from questioning its validity.

3. Under the act of March 17, 1866, declaring under what circumstances a judge of the superior court may in vacation give direction in a case where it appears that it has become impossible to carry out the provisions of a

will, jurisdiction of the subject-matter depends upon the consent in writing of all persons at interest, who are sui juris, that the judge may render a decree. If a feme covert be a beneficiary under a will probated prior to the married woman's act of 1866, and her husband has taken no steps to enforce his marital rights with respect to the devise or bequest made to her by the testator, her written consent that the judge may entertain jurisdiction of a petition for direction presented by the executor is essential to the validity of an order passed in vacation, authorizing the executor to sell the property of the estate.

4. Estoppel by judgment can not be successfully urged as a defense to a suit brought by a single plaintiff, where it appears that in a former suit jointly instituted by him and others with respect to the same matter the defendant interposed several distinct defenses, some going to the merits of the controversy and one to the right to maintain the action as brought, and it does not appear upon which of these defenses the judgment in his favor was rendered.

Argued April 14,—Decided June 16, 1905.

Complaint for land.  Before Judge Holden.  Wilkes superior court.  November 8, 1904.

On August 25, 1861, Seaborn Callaway died, leaving a will which contained the following provisions: "Item 2.  I wish all my property kept together and used as I have used the same during the life of my wife, she to have the privilege, with the consent of my executors, of giving off to my children, as they become of age or marry, such parts as she and they may select, to be accounted for in the final division, as shall be also what I have given heretofore to any of my children.  Item 3.  At the death of my wife, I wish my property equally divided between my children. . . Item 5.  If any of my children die without leaving children, I wish the share given to them by this will to revert to my other children. . . Item 7.  In the event of my wife's marriage, I wish her to have an equal part of my estate set off to her, which shall at her death revert to my children under the above limitations."  The will was duly probated on September 9th of the same year, and letters testamentary issued to Simeon Parker Callaway, one of the executors therein named, who was a son of the testator.  The property of the estate was kept together until the year 1866, when Mrs. Callaway, the widow of the testator, intermarried with one William Bryant and gave notice to the executor of her election to take dower.  The executor thereupon presented a petition for direction to the judge of the superior court of Wilkes county, reciting

in the petition that Mrs. Callaway had remarried and had elected to take dower, and stating various reasons why it was no longer practicable to carry out the intention of the testator of keeping the property together for the support of his family. The executor also set forth the names of the children interested in the estate, some of whom were minors, and stated that one of the adult beneficiaries under the will, Martha L. Callaway, had married Henry E. Spratlin. Included among those alleged to have attained their majority was the name of Marshall S. Callaway. By an order passed at chambers the judge appointed Spratlin as guardian ad litem to represent the minor children, and he accepted the appointment, and, in his representative capacity, signed a written consent that the judge might at chambers render such decree as he might deem proper under the petition, and might decide any issue of fact that might be raised by any of the parties at interest. This written consent appears to have been signed by Spratlin in his individual capacity also, and by all of the children who the petition alleged were adults, except the wife of Spratlin, formerly Martha L. Callaway, and the executor. It was also signed by the testator's widow, Mrs. Bryant, and by William Bryant, with whom she had intermarried. At chambers, on December 13, 1866, the judge passed an order which recited that "the parties interested" had requested that he should "decide the various matters presented in said will," and which directed the executor to sell at public sale, in the same manner as executors usually sell, "all the property of [the testator] except so much as may be set off for the widow's dower." The executor was also, by this order, given instructions as to how to make distribution of the proceeds of the sale. The land belonging to the estate was brought to sale by the executor under this order, was bid off by Samuel Barnett, and on February 5, 1867, the executor made to him a deed. The purchaser at the sale subsequently conveyed the land to Gabriel Toombs, and from him it passed, by a chain of deeds made by persons claiming under him, to Barnett Irvin, to whom it was conveyed on January 6, 1886. The conveyances last referred to purported to convey a fee-simple estate in the land, Samuel Barnett having on January 9, 1867, prior to the executor's sale, secured a deed from William Bryant and his wife, formerly Mrs. Callaway,

to that portion of the tract which she claimed as dower. The portion so claimed as dower was run off and platted by commissioners, she took possession of it as her dower, and it was so treated by all persons concerned, though no order of court formally setting it apart as dower appears of record. Barnett Irvin and his predecessors in title under the executor's sale and the deed conveying the dower interest remained in undisturbed possession of the land up to the time of the death of Mrs. Bryant, which occurred in December, 1898. On January 12, 1900, Simeon Parker Callaway, Marshall S. Callaway, and others claiming under the will of Seaborn Callaway, brought against Barnett Irvin an action to recover the tract of land which Mrs. Bryant had claimed as dower. Soon thereafter Barnett Irvin died, and his administrator, Charles E. Irvin, was made a party defendant in his stead. The defense interposed was: (1) title derived from Samuel Barnett; (2) title by prescription, and the making of valuable improvements on the land; (3) a denial that dower was ever set apart to the widow of Seaborn Callaway; and (4) estoppel, operating against Simeon Parker Callaway, from asserting title to the premises, he having, in his capacity of executor of Seaborn Callaway, conveyed the land by absolute deed to Samuel Barnett, the defendant's predecessor in title. The case was tried by the court without the intervention of a jury, upon an agreed statement of facts, and judgment in favor of the defendant was rendered. The case was then taken to the Supreme Court for review, but was there dismissed for want of prosecution.

The present action is a complaint for land, brought by Marshall S. Callaway on October 3, 1903, against Charles E. Irvin, as administrator of Barnett Irvin, to recover a one-seventh undivided interest in the tract of land in which the plaintiff's mother, Mrs. Bryant, claimed a dower estate. In addition to the defenses interposed to the previous action to which the plaintiff was a party, the administrator filed a plea of res judicata. By an amendment to his petition the plaintiff alleged that the order under which the land was sold at executor's sale was void for want of jurisdiction on the part of the judge of the superior court to pass it in vacation without the written consent of all parties at interest, and the sale was attacked on the ground that it was

not made in conformity to.the order, and for other reasons. The case proceeded to a trial on the merits, and resulted in the direction of a verdict in favor of the defendant. Exception is taken by the plaintiff to the disposition thus made of his case.

*S. H. Sibley,* for plaintiff.    *S. H. Hardeman,* for defendant.

Evans, J. (After stating the facts.) 1. As the land which Mrs. Bryant claimed as dower was actually admeasured by commissioners appointed to set apart dower to her out of the lands of her deceased husband, and as she went into possession of this tract, and all persons concerned acquiesced in her assertion of a dower estate therein, including the defendant's predecessors in title, it matters not that no formal judgment of the superior court assigning dower to her was shown to have been rendered. *Wells* v. *Dillard,* 93 *Ga.* 682. The right of action of the plaintiff did not accrue until the death of Mrs. Bryant. Id. 683; *Napier* v. *Anderson,* 95 *Ga.* 618.

2. The plaintiff swore, as a witness on the trial, that at the time the executor of his father's will procured the order of the chancellor authorizing a sale of the property of the estate, he (the plaintiff) was only nineteen years of age; that he had no notice of. the executor's petition for direction, and did not sign the written consent upon which the order was based, nor authorize any one to sign his name thereto; and that not until after his mother's death in 1898, when he was investigating his rights with respect to the lands set apart to her as dower, did he learn of the sale made by. the executor under color of that order. Counsel for the defendant in error insists, however, that it was not the right of the plaintiff to make this collateral attack upon the order, which is to be treated as the judgment of a court of competent jurisdiction, and the presumption indulged that the plaintiff did consent in writing and that all necessary jurisdictional facts were made to appear to the chancellor. Unless the record of the proceedings shows on its face the want of jurisdiction to pass the order, the position of counsel is doubtless maintainable. *Mayer* v *Hover,* 81 *Ga.* 309, 315. But it affirmatively appears that the judge acted upon the petition without procuring the written consent of Martha L. Spratlin (formerly Miss Callaway), who was one of the beneficiaries under the will of Seaborn

Callaway; and if such consent on her part was necessary, then the record shows upon its face that the order of the judge was void for want of jurisdiction to pass it, as the petition filed by the executor names her as one of the children of his testator who was interested in the estate. The order, if void, could be collaterally attacked by the plaintiff, unless he was for some reason estopped from calling into question its validity. His testimony was therefore pertinent as tending to show he was not instrumental in procuring the order or effecting the sale thereunder, he not having any notice of the proceeding or its result until after his mother's death, years after the sale. It further appears from the testimony introduced in his behalf that he never received any of the proceeds arising from the sale.

3. The only authority which the chancellor had to entertain jurisdiction of that proceeding in vacation was such as was conferred by the act of March 17, 1866. (Acts of 1865-6, p. 221; Civil Code, § 4855.) That act declares that when, "for any reason already existing or to exist, it becomes impossible to carry out any last will and testament, in whole or in part, the judges of the superior court shall have power to render at chambers, during vacation, any decree that may be necessary and legal in the premises; provided all parties in interest consent thereto in writing, and there is no issue as to facts; or if there is such an issue, there is a like consent in writing that the judge presiding may hear and determine said facts, subject to a revision by the Supreme Court, as in other cases;" and provided further, "that in all cases where minors are interested, the consent of the guardian at law or guardian ad litem shall be obtained before such decree is rendered." If Mrs. Spratlin was a party "in interest," the written consent of her husband, acting in his individual capacity and as guardian ad litem for minor children, was insufficient to give the judge jurisdiction over her or to authorize him to pass any order disposing of the property of the estate. The will provided that upon the death of the testator's wife, his executors should divide his property equally between his surviving children and the offspring of deceased children. Mrs. Spratlin was therefore to receive her share of the estate only in the event she survived her mother. The evidence discloses that the husband of Mrs. Spratlin never made any attempt to reduce her

interest in the estate to his possession in the exercise of his marital rights. Accordingly, when the order of sale was passed, she was a party at interest. *Archer* v. *Guill*, 67 *Ga.* 195; *Sterling* v. *Sims*, 72 *Ga.* 51; *DeVaughn* v. *McLeroy*, 82 *Ga.* 704 et seq., and cases cited; *Arnold* v. *Limeburger*, 122 *Ga.* 72. On the day that order was passed (December 13, 1866), the married woman's law went into effect; so, when the sale took place, her interest in her father's estate had become a part of her separate estate. Since that time she has not been deprived of such interest by any act on the part of her husband. She, and not he, was therefore the party in interest whose written consent was essential to confer jurisdiction upon the judge of the superior court to pass the order of sale, unless it be that the assent of both was necessary in order to cut off his future right to reduce her property to his possession. The record of the proceedings before the judge disclosed the fact of her marriage, as well as the fact that she was a beneficiary under her father's will; nevertheless, as the record also shows upon its face, her written consent to the judge's entertaining jurisdiction of the executor's petition for direction was not procured, and the order of sale was consequently a mere nullity. Nothing passed to the purchaser at the executor's sale, and the legal title to the reversionary interest in the tract of land set apart as dower was not shown to be in the defendant.

4. The present action is in no legal sense a renewal of that brought jointly by the plaintiff, Simeon Parker Callaway, and others claiming under the will of Seaborn Callaway. *White* v. *Moss*, 92 *Ga.* 244. Their right to recover depended upon their ability to show that they and each of them had title as against the defendant. *Wooding* v. *Blanton*, 112 *Ga.* 509. If one was not entitled to recover, there could be no recovery by any of his coplaintiffs. *Walker* v. *Pope*, 101 *Ga.* 666; *McGlamory* v. *McCormick*, 99 *Ga.* 148, and cases cited. The fact being brought to light on the hearing of that case that Simeon Parker Callaway was estopped from setting up title to the land, because of the deed executed by him in his representative capacity as executor of his father's estate in pursuance of the sale he had brought about, a finding in favor of the defendant against all of the plaintiffs was the only logical result of the trial. *Medlock*

v. *Merritt*, 102 *Ga.* 212.    All the facts with regard to the executor's sale and the connection which the plaintiffs had with the proceeding and the order of the judge under which it was made were ventilated at that hearing.    Upon what reason the presiding judge placed his judgment does not appear, but that the judgment was right is apparent.    The defendant relied, upon the trial of the case now under review, upon this previous adjudication as sustaining his plea of res adjudicata, insisting that a trial was had upon the merits and the same issues were involved.    He did not, however, undertake to go further and show what was actually decided.

Upon the party setting up an estoppel by judgment rests the burden of proving it.    1 Herman, Estoppel, § 410.    It matters not how numerous the questions involved in the suit may be, provided they were tried and decided (Id. § 210); for the judgment is conclusive not only of the thing directly decided, but of every fact which was essential to the adjudication.    Id. § 231. "Any conclusion which the court or jury must evidently have arrived at in order to reach the judgment or verdict rendered will be fully concluded."    24 Am. & Eng. Enc. L. (2d ed.) 766.    But even if a particular matter was put in issue, "if the issue was not determined, by reason of the decision turning upon some other point, or otherwise, there is no estoppel."    Id. 776–7.    And if "there be any uncertainty as to the precise issue involved and determined in the action, as, for example, if it appear that several distinct matters were litigated, upon any one or more of which the judgment may have turned, the whole matter of the action will be at large and open to subsequent controversy."    Id. 773–5.    Thus, where several defenses are pleaded, and the judgment does not show upon which issue the decision was rendered, there is no estoppel.    Id. 775, note, and cit.    "It is of the essence of estoppel by judgment that it is certain that the precise fact was determined by the former judgment."    De Sollar *v.* Hanscome, 158 U. S. 216.    In the case before us no such certainty exists; the defendant in the first suit interposed several defenses, one of which was that Simeon Parker Callaway was estopped, by the deed he had executed, from asserting title to the land; and this special defense was established, and affected not only his right to recover, but also cut off his coplaintiffs from any

recovery in that suit, independently of whether any of the other defenses were meritorious. That the judge reached the conclusion that the defendant had the better title rests upon the bare surmise that the judge may have fallen into the error of so deciding instead of placing his judgment upon the ground that one of the plaintiffs was clearly estopped from setting up his claim of title. As was held in *Worth* v. *Carmichael*, 114 *Ga.* 699, "A judgment rendered in litigation between the same parties is not conclusive in a subsequent suit between them on a different cause of action, except as to issues actually made and determined in the former litigation." See also *Draper* v. *Medlock*, 122 *Ga.* 234. That the plaintiff had an opportunity of having the merits of his claim passed on by the court, and was not cut off therefrom by the fact that one of his coplaintiffs had estopped himself from maintaining the action, should be made to affirmatively appear before the plaintiff is denied the privilege of proving, as he is now able to do, that his claim is just. "The estoppel" which the law contemplates "does not depend upon technicalities, but rests in broad principles of justice, and it can apply only when the party has had his day in court and an opportunity to establish his claim. . . Nothing would seem to be plainer than that no man could be barred by a judgment against him who was not by the issue placed in such a position that establishing his demand would entitle him to a judgment in his favor." Fifield *v.* Edwards, 39 Mich. 266–7. So it has been held that even in an equitable proceeding the rule is not different, and "where in the answer various matters of defense are set forth, some of which relate only to the maintenance of the suit, and others to the merits, and there is a general decree of bill dismissed, from which it does not appear what was the prevailing ground of defense, it is impossible to hold that the decree operates to preclude future proceedings." Foster *v.* The Richard Busteed, 100 Mass. 409. We are content to rest our decision upon this question on the reasoning of the learned justice who pronounced the opinion in that case.

*Judgment reversed. All the Justices concur, except Simmons, C. J., absent.*