## HAWKINS *et al. v.* JOHNSON *et al.*

1. A sheriff's levy described the property as "all that tract of land in. said [Baldwin] county on which Nathan Hawkins . . . lived at the time of his death, containing sixteen hundred and sixty-six and three fourths acres, subject to the widow's dower in seven hundred and one acres, . . . adjoining lands of Mrs. Little, Rose, and others." Subsequently the sheriff made an entry on the same execution, which, after reciting that the above-mentioned levy had been arrested by an affidavit of illegality and a sale thereunder prevented, stated that, such illegality being withdrawn, "the said levy is hereby renewed on the same tract of land called 'Stovall place,' as containing seventeen hundred acres more or less, excepting the widow's dower therein of Nathan Hawkins' widow." The advertisement under which the sheriff sold the property described it as "all that tract of land of seventeen hundred acres, more or less, known as Nathan Hawkins' home or 'Stovall place,' adjoining lands of Mrs. Little, Howell Rose, Mrs. Kenan, and others, except the widow's dower or life-estate in seven hundred and one acres thereof including the dwelling-house and appurtenances." The sheriff's deed to the purchaser at such sale described the property conveyed as "that tract of land in said [Baldwin] county consisting of seventeen hundred acres, more or less, known as Nathan Hawkins' home or 'Stovall place' adjoining lands of Mrs. Little, Howell Rose, Mrs. Kenan, and others, excepting the widow's dower or life-estate in seven hundred and one acres thereof." *Held,* that none of these writings was "void because of indefinite and insufficient description of the land mentioned" therein; that there was no material conflict in the descriptions in the levies and those in the advertisement and the deed; and that the particular portion of the tract which had been set aside as dower was not excepted from the levies, the advertisement or the deed, but the only exception was of the dower interest, or life-estate, of the widow in the dower land.

2. The return of a sheriff upon final process can not be attacked by parol evidence, except under a traverse thereof, based upon a legal ground, by a party to the cause in which such return is made.

Argued February 7,—Decided August 18, 1908.

Equitable petition. Before Judge Lewis. Baldwin superior court. January 16, 1907.

A. S. Johnson and Mrs. Elizabeth Johnson, as testamentary trustees of the estate of Thomas Johnson, deceased, brought an equitable petition against S. W. Hawkins, whereby they sought to restrain the defendant, who was alleged to be insolvent, from trespassing upon certain described lands, alleged to be the property of such estate and to have been taken possession of by defendant, and from interfering with the right of plaintiffs to occupy the same; and also to recover the land. Subsequently, by consent of

parties, Mrs. Lizzie P. Myrick and J. C. Hawkins, sister and brother of the original defendant, were, with their consent, made parties defendant to the·cause, and plaintiffs amended the petition by praying that title to the premises in dispute be decreed to be in them. The tract of land in controversy consisted of 556 acres, which, upon ·the death of Nathan Hawkins, the father of the defendants, had been set apart as dower to his widow, Mrs. Amanda Hawkins, from a larger tract of about 1700 acres which Nathan Hawkins owned when he died; and the widow having died, defendants claimed title to and possession of the same as his heirs-at-law. Nathan Hawkins had been a member of the firm of N. Hawkins &. Co., which was indebted to Thomas Johnson, and in a suit against this firm and the several partners therein, Johnson had obtained a judgment against the defendants. An execution issued from this judgment was, after the death of Nathan Hawkins, levied upon the tract of land from which the dower had been assigned to his widow, as property which belonged to him at his death, and the property levied upon was, after some delay, caused by an injunction, affidavits of illegality, and a claim, sold by the sheriff, and Thomas Johnson, the plaintiff in execution, became the purchaser at such sale and received the sheriff's deed thereto. The plaintiffs. claimed, that the sheriff had levied upon and sold the entire tract of about 1700 acres, subject to the widow's dower in a portion thereof; that therefore Thomas Johnson, under whose will they claimed, purchased the reversionary interest in the dower tract, and the deed of the sheriff conveyed the same to him; and that, the dowress having died, they were entitled to the possession of this land, the premises in dispute. The defendants claimed, that the sheriff never levied upon the reversion in the dower tract, but only upon the balance of the 1700-acre tract which remained after a described tract of 556 acres had been set apart. therefrom to Mrs. Amanda Hawkins as her dower; that consequently the sheriff, who sold the land levied upon, never advertised or otherwise undertook to sell the reversionary interest in the dower land; that the title to this interest in such land vested in them upon the death of their. father, Nathan Hawkins; and that they acquired the full title to the premises in dispute upon the death of the dowress, Mrs. Amanda Hawkins.

Upon the trial the plaintiffs introduced the following evidence:

(*a*) A deed from J. B. Wall, as sheriff of Baldwin county, to
Thomas Johnson, dated February 4, 1873, purporting to have
been executed by the sheriff in pursuance of a sale by him, on that
day, of certain lands therein described, as the property of Nathan
Hawkins, by virtue of a levy thereon by Obediah Arnold, former
sheriff, of an execution issuing from the county court, in favor of
Thomas Johnson against Nathan Hawkins and others, after due
advertisement. It described the land as follows: "That tract
of land in said county, consisting of (1700) seventeen hundred
acres, more or less, known as Nathan Hawkins' home or 'Stovall
place' adjoining lands of Mrs. Little, Howell Rose, Mrs. Kenan,
and others, except the widow's dower or life-estate in seven hun-
dred and one acres thereof including the dwelling-house and ap-
purtenances. The habendum clause was: "To have and to hold
all the said seventeen hundred (1700) acres of land, less the
widow's dower or life-estate as aforesaid, in seven hundred and
one (701) acres thereof, to the said Thomas Johnson, his heirs,"
etc. (*b*) An execution from the county court, dated May 26,
1866, in favor of Thomas Johnson against "Nathan Hawkins,
Walter H. Mitchell, and Theodore G............., of the firm of
N. Hawkins & Co.," issued upon a judgment rendered on May 21,
1866, the fi. fa. being for $7,820 principal, and stated amounts as
interest and costs. Upon this execution there was an entry of a
levy upon a city lot in Milledgeville, as the property of Walter
Mitchell, followed by an entry that before any sale under such
levy a claim had been interposed, etc. Then came this entry of
levy: "While the above-stated claim is pending and waived, I
also levied this fi. fa. on all that tract of land in said county on
which Nathan Hawkins, one of the defendants, lived at the time
of his death, containing sixteen hundred and sixty-six and three
fourths acres, subject to the widow's dower in seven hundred and
one acres, all in Baldwin county. Gave notice to the tenants in
possession, and advertised according to law, this Mch. 25th, 1871,
adjoining lands of Mrs. Little, Rose and others. Obediah Arnold,
Sheriff." This was followed by an entry by the sheriff, that the
sale under this levy had been "arrested by an affidavit of illegality
filed by L. H. Briscoe, Exr. of Nathan Hawkins." After this was
the following: "The levy of March 25th, 1871, on the 'Stovall
place' of sixteen hundred and sixty-six and three fourths acres,

or excepting the dower therein of Martha Hawkins, widow, being arrested by affidavit of illegality of L. H. Briscoe Ex. of Nathan Hawkins deceased, and sale thereunder of said land being thus prevented; and now said Briscoe having withdrawn said affidavit of illegality, the said levy is hereby renewed on the same tract of land called 'Stovall place' as containing seventeen hundred acres more or less, excepting the widow's dower therein of Nathan Hawkins' widow; and also I this day levied this fi. fa. on five and a half shares of Milledgeville Hotel stock and on another tract of land of eight hundred and fifty-eight acres, called the 'Ladd place' in said county, adjoining the first-named tract called 'Stovall place,' the lands of Dr. Wm. A. Jarrett and others—all levied on as separate property of Nathan Hawkins, one of the defendants, it being pointed out by pltff's attorney as subject to the execution; also gave notices to the tenants and advertised according to law in this behalf. December 1st, 1871. Obediah Arnold, Sheff." Then followed other entries, that the sale had been enjoined; that the injunction had been dissolved, and the fi. fa. proceeded, and the land was advertised again for sale; that certain parties had filed a claim and stopped the sale, and an illegality had also been interposed "by L. H. Briscoe as Ex. of Nathan Hawkins deceased." There was a subsequent entry, dated December 28, 1872, that, the claim being withdrawn, "this fi. fa. proceeds, and the sale of said 'Stovall place' is again advertised for next February sale day." Signed, ".Obediah Arnold, Sheff." Following this was an entry, dated February 4, 1873, that "The tract of land above levied on called 'Stovall place' was this day sold according to law, to the plaintiff, Thomas Johnson, at the bid or price of nine hundred and five dollars," etc. (*c*) The following advertisement: "Baldwin Sheriff's Sale. Will be sold on the first Tuesday in February next, in lawful sale hours, before the court-house door in Milledgeville, . . Also all that tract of land of seventeen hundred acres, more or less, in said county, known as Nathan Hawkins home or 'Stovall place' adjoining lands of Mrs. Little, Howell Rose, Mrs. Kenan, and others, except the widow's dower or life-estate in seven hundred and one acres thereof, including the dwelling-house and appurtenances, . . levied on as separate property of Nathan Hawkins, deceased, to satisfy a fi. fa. from Baldwin county court in favor of Thomas Johnson against Nathan Hawkins, Walter H.

Mitchell, and Theodore A. Goodwin, as copartners. Property pointed out by plaintiff's attorney. Dec. 30, 1872. Obediah Arnold, Shff. B. C."

The defendants moved that the court rule out the foregoing evidence, and direct a verdict for them against the plaintiffs, upon the grounds, that the entries of levy, the advertisement, and the deed were illegal and void, because of indefinite and insufficient description of the lands mentioned in them; that such description failed to put prospective bidders at the sale on notice of what was to be sold, and was not followed in the advertisement and the deed, but the descriptions "were grossly at variance and irreconcilable and void;" and that "the 556 acres constituting the dower lands of Mrs. Amanda Hawkins, as carved out of the 'Stovall place,' were not covered by nor included in' said levy or levies, or in said advertisement or deed, but were explicitly and expressly excepted therefrom." The court overruled this motion. The defendants then introduced: (a) Two sheriff's advertisements, one of which was dated April 4, 1871, and gave notice that "on the first Tuesday in May next," etc., the following property would be sold: "One tract of land in the county of Baldwin on which Nathan Hawkins lived at the time of his death, containing sixteen hundred and sixty-six and three fourths acres—subject to the widow's dower in seven hundred and one acres—adjoining lands of Mrs. Little, Rose, and others." The other, which was dated Dec. 1, 1871, was for a sale by the sheriff, "on the first Tuesday in January next," of the following property: "all that tract of land in said county known as the Nathan Hawkins 'Stovall place' containing seventeen hundred acres more or less, excepting the widow's dower, adjoining lands of Mrs. Kenan, Howell Rose, and others." (b) "The record of the assignment of dower to Mrs. Amanda Hawkins, widow of Nathan Hawkins, from and out of the 'Stovall place.'." (c) J. C. Hawkins, one of the defendants, offered to testify that at the sale of the Stovall place, in the presence of witness and Thomas Johnson, and in the hearing of both, the sheriff, J. B. Wall, stated that the dower lands of Mrs. Amanda Hawkins were not to be sold; "that he [witness] bid at said sale, and bid on that part of the 'Stovall place' exclusive of the said dower, and understood, from statements by the sheriff, that others were bidding on the same land that witness bid on." This testimony was repelled, on objection. (d) S. W. Hawkins,

another of defendants, offered to testify that immediately after the Stovall place was first levied on he was present at the office of William McKinley, attorney for Thomas Johnson, and heard a conversation between him and Mrs. Amanda Hawkins, the mother of witness, in which "McKinley stated that the 556 acres of land constituting the dower . . was not included in the levy and would not be sold under it, and further agreed that he would not have the said 556 acres levied upon under Johnson's fi. fa." This testimony also was rejected. The court directed a verdict for the plaintiffs for the lands in controversy, and perpetually enjoining defendants, as prayed for in the petition. The defendants excepted to each of the rulings stated.

*D. B. Sanford, D. S. Sanford,* and *C. T. Crawford,* for plaintiffs in error.

*Allen & Pottle,* contra.

FISH, C. J. (After stating the facts.)

1. The levies were not "illegal and void because of indefinite and insufficient description of the lands mentioned in them," nor was the sheriff's advertisement under which the land ·was sold, or the deed which he made in pursuance of the sale, open to this objection. The land levied upon was described in the first entry of levy as "all that tract of land in said county on which Nathan Hawkins . . lived at the time of his death, containing sixteen hundred and sixty-six and three fourths acres, subject to the widow's dower in seven hundred and one acres, all in Baldwin county; . . adjoining lands of Mrs. Little, Rose, and others." While "A levy on land is void for uncertainty which fails to describe the land levied upon with such precision as to inform a purchaser what he is buying, and enable the officer selling to place the purchaser in possession" (*Bird* v. *Burgsteiner,* 100 *Ga.* 486, 28 S. E. 219), yet, so far as description is concerned, a levy in contemplation of law is sufficient if it enables one to locate the property and to identify it when found. *Wiggins* v. *Gillette,* 93 *Ga.* 20, 23 (19 S. E. 86, 44 Am. St. R. 123) ; *Collins* v. *Boring,* 96 *Ga.* 360 (23 S. E. 401). So, the property levied upon was sufficiently described in the first entry of levy, as the description was sufficient to enable a prospective purchaser and the officer selling to locate and identify the property. It located the land in Baldwin county, and as being "all that tract in said county on which

Nathan Hawkins . . lived at the time of his death, containing sixteen hundred and sixty-six and three fourths acres," and "adjoining lands of Mrs. Little, Rose, and others;" and the language of· exclusion, "subject to the widow's dower in seven hundred and one acres," tended to aid the description, as any one desiring to bid on the land might ascertain from what tract of land belonging to Nathan Hawkins at the time of his death dower had been set apart to his widow. It is obvious that it would be. an easy matter for any one, sufficiently interested in the subject to contemplate bidding at the sheriff's sale, to ascertain upon what tract of land, in Baldwin county, Nathan Hawkins lived at the time of his death, especially when informed by the levy that such tract adjoined the lands of Mrs. Little, Rose, and others, and that dower had been assigned therefrom to the widow of Hawkins; and he could likewise easily ascertain, from the record in the office of the clerk of the superior court, just what portion of such tract had been set apart as dower, as the law requires the plat of the "survey of dower" to be recorded, with the return of the dower commissioners, in that office. Civil Code, §4701. But the contention of counsel for plaintiffs in error, on this point, in their brief, is, that the description in the levy "was too indefinite and uncertain," in that "it failed to put prospective bidders on notice of . . what interest in [the] lands was to be sold;" that "it did not appear whether the fee of the entire Stovall place or the fee of the 1100 odd acres only was to be sold." This is certainly not a sound criticism of the first levy. That levy, as we have seen, was upon "*all* that tract of land in said county on which Nathan Hawkins . . lived at the time of his death, containing sixteen hundred and sixty-six and three fourths acres, subject to the widow's dower *in* seven hundred and one acres." This clearly was a levy upon the entire tract described, and could not be construed to be a levy upon only that portion of it not included in the plat of the survey of the dower. The words, "subject to the widow's dower in seven hundred and one acres," clearly indicate that the fee in the whole tract was levied upon and was to be sold, subject only to the life-estate of the widow of Nathan Hawkins in that portion of such land which had been set aside to her as dower. They were very apt words for this purpose. The widow's dower *in* seven hundred and one acres was simply her interest therein, which was a life-

23

estate, and, subject to this life-estate, the fee in the whole original tract from which the dower had been carved was levied upon. This seems clear and definite.

Why the sheriff should have deemed it necessary to make a second levy we can not understand. However, judging from the language of the second entry of levy, he seems to have been under the impression that as the progress of the former levy had, after advertisement thereunder, been arrested by an affidavit of illegality until the time fixed by the advertisement for the sale had passed, the first levy had become stale or dormant and needed to be revived, or, as he termed it, "renewed." It is obvious, though, that the first levy was in full force and effect when the second was made, as it never had been dismissed, and the second levy·can not be considered as being equivalent to a dismissal of the former one, for it was clearly intended to be in aid of the first. The most that can be claimed as to the effect of the second entry of levy is that it is explanatory of the first, and that the two entries should be construed together. There is no inconsistency in the descriptions of the property levied upon in these two entries of levy. Instead of there being such inconsistency, the description contained in the first is, by reference thereto in the second, made a part of the description in the latter. The second levy describes the land embraced in the first levy as "the 'Stovall place' of sixteen hundred and sixty-six and three fourths acres," that is, that the land described in the original levy as that tract of land in Baldwin county on which Nathan Hawkins lived at the time of his death is the tract called the "Stovall place." This simply somewhat enlarges the description contained in the first levy, affording an additional means by which to locate and identify the land levied upon. The same may be said in reference to the substitution in the second levy of the words "seventeen hundred acres more or less" for the words "sixteen hundred and sixty-six and three fourths acres," which appeared in the first entry. The clause in the second entry of levy, "excepting" from the levy upon the entire tract of seventeen hundred acres, more or less, "the widow's dower therein of Nathan Hawkins' widow," does not necessarily conflict with the expression, "subject to the widow's dower in seven hundred and one acres," which appears in the first levy. "The widow's dower" *in* the land levied upon was the widow's life-estate in that portion of such land

which had been set apart to her as dower. But even if these two clauses of exclusion, when construed separately, seem to conflict, when they are construed together, as they should be, they unmistakably refer to the legal right of dower in the land set apart to the widow, and not to the dower tract itself.

Counsel for plaintiffs in error cite *McAfee* v. *Arline,* 83 *Ga.* 645 (10 S. E. 441), and *Wells* v. *Dillard,* 93 *Ga.* 682 (20 S. E. 263), to support their contention that the reversion in the dower land was not sold. In the first of these cases it was held that "The clause, in a deed, 'except the dower of fifty acres and fully described in deed given to Corbin Banking Co.; the said tract or parcel of land hereby conveyed  .  . contains all the dwellings and gin-house except the old original dwelling-house,' is strictly an exception." There the grantor excepted from his conveyance, not the widow's dower in the tract conveyed, nor the dower in fifty acres of such tract, but he described the land excepted as "the dower of fifty acres," which was the same as if he had said, "except the dower land of fifty acres." The word "dower" there was descriptive of land, and not of an interest in land. The second case cited is on the same line. There an administrator conveyed to the widow of the intestate "lot 154, in 31st dist. Marion County, except the widow's dower and ten acres off southeast corner," and the deed recited that the widow "bought all of said lot except the widow's dower and ten acres off of the southeast corner of said lot." The widow at the time of the sale was in possession of a definite portion of the lot, which portion had been previously laid off as her dower; and it was held, that "the proper construction of the conveyance is, that both this portion and the ten acres in the southeast corner were wholly excepted from the sale made by the administrator, the phrase 'widow's dower,' as used in the conveyance, meaning, not the legal right of dower, but the parcel of land itself over which that right had been asserted and exercised." Had the description in the conveyance been, "all of lot 154, in the 31st dist. of Marion county, except the widow's dower *therein,*" and if the deed had recited that the widow "bought all of said lot except the widow's dower *therein,* we apprehend that the ruling as to the effect of the deed would have been different. For the widow's dower in a described tract of land must mean either a life-estate in the whole of such tract, or such an estate in a designated

and described portion thereof. In the present case, however, the meaning of the words, in the second entry of levy, "excepting the widow's dower therein of Nathan Hawkins' widow," if not precisely clear from the words themselves, is made clear by reference to the first levy, of which the second was, by its very terms, intended to be simply a renewal.

The sheriff's advertisement, introduced by plaintiffs, was not "void because of indefinite and insufficient description of the lands" therein mentioned. The description, "all that tract of land of seventeen hundred acres, more or less, known as the Nathan Hawkins home or 'Stovall place,' adjoining lands of Mrs. Little, Howell Rose, Mrs. Kenan, and others, except the widow's dower or life-estate in seven hundred and one acres thereof including the dwelling-house and appurtenances," was clearly sufficient for prospective purchasers to locate and identify the land to be sold, and it also clearly indicated that the whole interest in the entire tract of about seventeen hundred acres was to be sold, except the life-estate of the widow in the dower lands. The language, "except the widow's dower or life-estate in seven hundred and one acres," plainly shows that it was the life-estate of the widow, in that portion of the tract set apart as her dower, which was excepted from the sale to be had under the levy, and not the dower tract itself. This advertisement was certainly perfectly consistent with the first levy, and it was not at all inconsistent with the second one, when it is construed, as it should be, in connection with the first. The sheriff's deed followed the language of this advertisement, and therefore there was no conflict between the description in the deed and the description in the advertisement, and none between the description in the deed and those in the levies. The fact, to which counsel for plaintiffs in error call attention in their brief, that the dower tract actually consisted of only 556 acres, instead of 701 acres, as indicated in the levies, the advertisement and the deed, is immaterial; for, as we have shown, it was not the dower tract which was excepted in these writings, but the widow's life-estate therein; and if she in fact only had a dower, or life-estate, in 556 acres, then it was only this interest which was excepted. Even if it could be held that, under the levies, the advertisement, and the deed, a life-interest in the widow in 701 acres of the land was excepted, the result, in this case, would be the same, as after her

death the whole or complete legal title to the entire original tract of land which had been levied upon, and sold by the sheriff to Thomas Johnson, would be in the plaintiffs, as trustees under the will of Johnson, the fact that the plaintiffs held whatever title he had in his lifetime being shown by documentary evidence introduced by them and uncontested by the defendants. This documentary evidence it was not necessary to set out in the statement of facts preceding this opinion, as the questions presented and relied on by plaintiffs in error did not involve its discussion.

The sheriff's advertisements of sale, introduced by defendants, have not been considered, for the simple and sufficient reason that the land was not sold under these advertisements or either of them. Each of them was functus officio, by lapse of time, when the land was finally exposed for sale by the sheriff and sold by him. The sale took place on the first Tuesday in February, 1873, in pursuance of an advertisement that it would be sold on that day, dated December 30, 1872. No bidder, or prospective bidder, at that sale was concerned in an advertisement dated April 4, 1871, giving notice that on the first Tuesday in May thereafter certain property would be sold by the sheriff, nor in an advertisement dated December 1, 1871, of property to be sold on the first Tuesday in January, 1872, although each of these advertisements may have been intended to be based upon the identical levy under which the sale advertised for the first Tuesday in February, 1873, was to take place. The two advertisements introduced by defendants were wholly irrelevant and immaterial.

2. The exceptions to the exclusion of the testimony of J. C. Hawkins and that of S. W. Hawkins, offered by defendants for the purpose of contradicting the return of the sheriff as to the property sold under the execution and the deed which he executed to the purchaser at such sale, were not well taken. The return of the sheriff as to the sale, entered on the fi. fa., was, so far as material here, as follows: "Feb. 4, 1873. The tract of land above levied on, called 'Stovall place,' was this day sold according to law, to . . Thomas Johnson, at the bid or price of nine hundred and five dollars," etc. From this entry it appears that the whole tract of land, called "Stovall place," as levied on, was sold by the sheriff. If the return of the sheriff on the execution had been that "The tract of land called 'Stovall place' was this

day sold," etc., such return, standing alone, would clearly mean that all the interest of the defendant in execution in such tract, or any portion of the same, had been sold; most assuredly it would mean that no distinct and separate part of the land itself had been excepted from the sale. But the return stated that "The tract of land above levied on, called 'Stovall place,' was this day sold," etc., and, construed in the light of the levy or levies, this means that the tract of land known as "Stovall place" was sold as levied on, that is, subject to the widow's dower in a portion of such tract. The description, "The tract of land above levied on, called 'Stovall place,' " necessarily includes the whole tract; and parol evidence that 556 acres thereof, which had been set aside as the widow's dower, was not sold would directly contradict the return of the sheriff as to the sale. Such evidence would also contradict the deed which the sheriff made to the purchaser at the sale, which, as we have seen, purported to convey this entire tract of land, "except the widow's dower, or life-estate in seven hundred and one acres." In *Parler* v. *Johnson,* 81 *Ga.* 254 (7 S. E. 317), it was held: "The sheriff's entry upon the fi. fa. and his deed executed in pursuance thereof, after the lapse of more than twenty years are better evidence than the parol testimony of a single witness as to what property was sold. And the entry is not traversable by third persons upon the trial of an action against them for the premises." In the opinion, at page 259, Chief Justice Bleckley said: "One witness testified that the land actually sold by the sheriff was not that embraced in the sheriff's return and in his deed of conveyance; that the reversion in the land covered by the widow's dower was not sold. More than twenty years had elapsed; and surely the recollection of this one witness was not sufficient to match and master official documents like these. The defendants in the action wanted to traverse the return, that is, make up a collateral issue denying its truth. The court declined to allow this, and we suppose correctly, for we never heard of the like. They who proposed the traverse were not parties to the cause in which the return was made." It will be seen that the court there passed upon two questions in reference to an attack upon the return of the sheriff as to the sale under the execution. The first was as to the sufficiency of the parol evidence—apparently introduced without objection—to overcome this return and the deed made in pursuance thereof.

The second was as to the right of persons not parties to the cause in which the sheriff's return was made, to traverse such return. Under the ruling upon the first question, if, in the present case, the court had permitted J. C. Hawkins, one of the defendants, to testify that he was present at the sheriff's sale in question, and heard the, sheriff state that the dower lands were not to be sold, such testimony could not have changed the result of the trial, as the evidence in the case would have demanded a verdict in favor of the plaintiffs; for here we have the testimony of a single witness as to what property was sold at a sheriff's sale, offered more than thirty years after such sale, to contradict the return of the sheriff and the deed which he made to the purchaser at that sale. Under the ruling on the second question, persons who were not parties to the cause in which the return of the sheriff was made can not traverse the return. Under the decision in *Jinks* v. *American Mortgage Co.*, 102 *Ga.* 694 (28 S. E. 609), such a sheriff's return, "so long as it stands unchallenged upon the record, is presumptively correct;" and, in the absence of a traverse thereof, is conclusive upon the parties to the case, and of course, it must follow, is conclusive upon those claiming under a party to the case. In the opinion Mr. Justice Cobb, after citing decisions of this court, to the effect that "The entry of a sheriff on process in his hands is generally not traversable;" but "Such entry may be traversed, however, for fraud or collusion;" and that "The code 'widened the laws of traverse as to returns of service,'" said: "But the returns of sheriffs and other levying officers upon final process in their hands are still governed by the law as it stood before the code was adopted. . . As long as the entry of the sheriff reciting a sale at an amount more than that due on the execution stands upon the records unimpeached and unchallenged, such entry is conclusive upon the plaintiff in execution. If the entry is false, the officer making it is liable in damages to any one injured thereby. If it was made fraudulently or collusively, it may be attacked and set aside at the instance of any one who is the victim of such fraud or collusion."

We think it necessarily follows from these two decisions that the court rightly excluded the parol evidence offered to contradict the sheriff's return of the sale under the execution and his deed made in pursuance thereof. Under the first decision, third parties

can not traverse the return of the sheriff; and under the second, such return is conclusive upon a party to the cause until it is traversed upon proper ground, and consequently must be conclusive upon those holding under him. Our ruling, of course, applies to the rejection of the testimony of S. W. Hawkins as to a statement made, in his presence, to his mother, by an attorney for the plaintiff in execution, which testimony was otherwise inadmissible as an effort to contradict the levy entered upon the fi. fa., by parol evidence. According to the testimony of this witness, which appears in the record, he might have been "a little over 15 years of age" when he heard the statement in question, but it is doubtful whether he was even that old, and about thirty-five years had elapsed since he heard it.

There being no error in any of the rulings complained of, the judgment of the court below is

*Affirmed. All the Justices concur.*